# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 06/09/2017 05:36 PM           INDEX NO. 653186/2017
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 06/09/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- X

AmTrust North America, Inc., Wesco Insurance Company, Inc., and Technology Insurance Company, Inc.,

        Plaintiffs,

  -against-

KF&B, Inc. dba KF&B Program Managers Insurance Services,

        Defendant.

---------------------------------------- X

Index No. _____

**SUMMONS**

Plaintiffs designate New York County as the place of trial.

Venue is proper pursuant to CPLR § 501.

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on Plaintiffs' attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York.
June 9, 2017

**KASOWITZ BENSON TORRES LLP**

By: /s/ Michael J. Bowe
    Michael J. Bowe
    (mbowe@kasowitz.com)
    Alexander B. Simkin
    (asimkin@kasowitz.com)
    1633 Broadway
    New York, NY 10019
    (212) 506-1700

*Attorneys for Plaintiffs*
*AmTrust North America, Inc.,*
*Wesco Insurance Company, Inc., and*
*Technology Insurance Company, Inc.*

TO:
KF&B, Inc. dba
KF&B Program Managers Insurance Services
425 West Broadway, Suite 408
Glendale, CA 91204

FILED: NEW YORK COUNTY CLERK 06/09/2017 05:36 PM  INDEX NO. 653186/2017
NYSCEF DOC. NO. 1                                  RECEIVED NYSCEF: 06/09/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------- X
AmTrust North America, Inc., Wesco Insurance :
Company, Inc., and Technology Insurance
Company, Inc.                                : Index No. _____

        Plaintiffs,                        : Date Issued: _____

  -against-                                 : **COMPLAINT**

KF&B, Inc. dba KF&B Program Managers         :
Insurance Services,

        Defendant.
------------------------------------- X

Plaintiffs AmTrust North America, Inc., Wesco Insurance Company, Inc., and Technology Insurance Company, Inc. (collectively "AmTrust" or "Plaintiffs"), for its complaint against defendant KF&B, Inc. dba KF&B Program Managers Insurance Services ("KF&B" or "Defendant"), allege:

## PRELIMINARY STATEMENT

1. AmTrust hired KF&B to operate as the program manager for an insurance program known as the KF&B Limousine and Taxi Program (the "Program"). KF&B was responsible for selling AmTrust insurance policies to qualified limousine and taxi companies and for managing aspects of the Program while it was in place.

2. In its role as program manager of the Program, KF&B owed both contractual and fiduciary duties to AmTrust. KF&B breached those duties to the detriment of AmTrust.

3. First, KF&B breached its underwriting obligations by selling AmTrust insurance to unacceptably risky or otherwise inappropriate companies. In order to properly manage risk and price its insurance product, AmTrust required KF&B to follow certain "Underwriting Guidelines" in connection with the insurance that KF&B sold on AmTrust's behalf. KF&B

ignored these guidelines and its fiduciary duties in an attempt to sell more insurance and maximize its commissions. Because of KF&B's misconduct, AmTrust will suffer losses in excess of $20.4 million in connection with insurance policies that KF&B improperly sold as part of the Program.

4. Second, KF&B breached its obligations to properly manage the Program. The insurance that KF&B sold on behalf of AmTrust contained per-claim deductibles of $25,000 or higher. KF&B's job responsibilities included ensuring that the people it sold insurance to posted the required collateral and paid their deductibles. KF&B failed to do its job and AmTrust has been unable to collect in excess of $3.7 million in deductibles and collateral that it is owed from people who purchased insurance through KF&B as part of the Program. AmTrust has also suffered significant reputational harm based on KF&B's mismanagement of the Program.

## PARTIES

5. Plaintiff AmTrust North America, Inc. is a Delaware corporation with its principal place of business in New York, New York.

6. Plaintiff Wesco Insurance Company is a Delaware corporation with its principal place of business in New York, New York.

7. Plaintiff Technology Insurance Company, Inc. ("TIC") is a Delaware corporation with its principal place of business in New York, New York. Prior to 2017, TIC was domiciled in New Hampshire.

8. Defendant KF&B, Inc. dba KF&B Program Managers Insurance Services is a California corporation with its principal place of business in Glendale, California.

## JURISDICTION AND VENUE

9. Jurisdiction is proper pursuant to N.Y. General Obligations Law §§ 5-1401 and 5-1402 because the Plaintiffs and Defendant agreed in the Managing Producer Agreement to resolve disputes "arising under or relating to th[e] agreement" in a court sitting in New York, New York. The parties also agreed that the Managing Producer Agreement "shall be interpreted and governed by the laws of the State of New York." Jurisdiction is also proper pursuant to CPLR §§ 301 and 302.

10. Venue is proper pursuant to CPLR § 501 in that, among other things, Plaintiffs and Defendant contractually agreed to venue in this Court.

## FACTUAL BACKGROUND

### The Relationship Between The Parties

11. AmTrust and KF&B are parties to a Managing Producer Agreement (the "MPA"). A true and correct copy of the MPA, with amendments, is attached hereto as Exhibit 1.

12. The MPA was in effect from July 1, 2011 to December 31, 2015. While TIC was not a party to the MPA at the outset, it was added as party by written amendment effective July 1, 2013.

13. As program manager of the Program, KF&B also owed AmTrust fiduciary duties. This fiduciary relationship was expressly acknowledged in the MPA, which stated that KF&B "shall perform its obligations as a fiduciary of AmTrust, and shall use its best efforts to perform all acts necessary for the proper conduct of business on behalf of AmTrust."

14. The MPA appointed KF&B "for the purpose of marketing, soliciting, underwriting, binding, executing, and serving on behalf of AmTrust the types and classes of business in the states authorized in [the] Program."

### KF&B's Underwriting Obligations

15. Section II.B of the MPA required KF&B to "perform the functions specified in [the] Program in accordance with the highest standards of the industry and pursuant to the standards and procedures set forth in [the] Program, including compliance with all Underwriting Guidelines and directives issues by AmTrust from time to time."

16. The Underwriting Guidelines were revised from time to time and an exemplar copy of the guidelines is attached hereto as Exhibit 2.

17. The Underwriting Guidelines make clear that KF&B was supposed to underwrite "well run operators" or "preferred accounts."

18. In order to ensure that accounts have been "priced to provide a successful underwriting profit," the Underwriting Guidelines contain a detailed list of specific requirements and prohibitions that KF&B was required to follow.

19. The MPA further required KF&B to "maintain a sufficient staff of competent and trained personnel to perform its duties" and to inspect new accounts and to re-inspect existing accounts every one or two years (depending on account size) to make sure that only appropriate risks are underwritten.

20. In the MPA, KF&B specifically agreed to indemnify AmTrust for any damages related to KF&B's failure "to adhere to the provisions of this Agreement or the Underwriting Guidelines when quoting, binding, underwriting or rating a Policy, whether intentional or not . . . ."

### KF&B's Collateral and Deductible Obligations

21. The AmTrust insurance policies that KF&B was responsible for selling contained per-claim deductibles of $25,000 or higher. A policyholder with a $25,000 deductible is

required to reimburse AmTrust for the first $25,000 of payments on a particular claim. This could be a small percentage of a very large claim or 100% of a claim resolved for less than the deductible. For example, if a claim is resolved for $2,000, the policyholder would be responsible for 100% of the $2,000.

22. In order to ensure that policyholders would be able to repay AmTrust for their deductible obligations, KF&B was responsible for ensuring that each policyholder provide appropriate collateral for their anticipated deductible obligations.

23. AmTrust required that the collateral "take the form of cash and/or [a] clean, irrevocable Letter of Credit, drawn on a Federal Reserve member bank, containing an evergreen renewal clause meeting AmTrust published standards" and required that the collateral be set at certain minimum amounts, as set forth in more detail in the Underwriting Guidelines.

24. KF&B was also required to have the policyholders sign a collateral agreement.

25. KF&B was also responsible for collecting deductible payments from the policyholders as they became due.

26. The MPA incorporated by reference the AmTrust Policy Deductible Guidelines, which KF&B promised to follow. A copy of the AmTrust Policy Deductible Guidelines is attached hereto as Exhibit 3.

27. Pursuant to the AmTrust Policy Deducible Guidelines, KF&B was responsible for the following deductible collection activities:

a) Contacting the policyholder to inquire about payment status within 10 days after receipt of the 30 day collection letter from the Claim Administrator;

b) Contacting the policyholder within 10 days after receipt of the 60 day collection letter from the Claim Administrator to demand payment within 10 days; and

c) Referring an account with uncollected balances for 90 days to a collection service approved by AmTrust and providing AmTrust with written documentation of the

collection effort and written confirmation that uncollected deductibles did not result from a failure to pursue known deductible recoveries in accordance with the guidelines.

28. The AmTrust Policy Deductible Guidelines also required KF&B to cancel and/or non-renew any in-force policy that had past due deductibles to the extent permitted under statutory guidelines

29. KF&B was also responsible for administering other aspects of the Program consistent with its contractual and fiduciary obligations.

30. Furthermore, even after the MPA terminated on December 31, 2015 (through the mutual agreement of the parties), KF&B was still required to "cooperate and support AmTrust in the collection and recovery of deductible security/collateral for all policies whether in-force or expired."

**KF&B Breached Its Contractual and Fiduciary Obligations**

31. KF&B was paid a commission for its services (as set forth in more detail in the MPA).

32. KF&B ignored its contractual and fiduciary obligations to only sell AmTrust insurance policies to "well run operators" and to comply with the Underwriting Guidelines.

33. Instead, in an effort to maximize its commissions, KF&B sold AmTrust insurance policies to numerous risky limousine and taxi companies that did not conform to the AmTrust Underwriting Guidelines.

34. In an effort to minimize its costs, KF&B also failed to perform the required and appropriate due diligence on the limousine and taxi companies that it sold AmTrust insurance policies to.

35. AmTrust priced its insurance product based on the belief that KF&B was selling its policies to "well run operators" that were in compliance with the Underwriting Guidelines. In actuality, KF&B was selling AmTrust's insurance product to risky and non-conforming purchasers.

36. For example, KF&B sold AmTrust insurance to Gulf Coast Transportation notwithstanding the fact that, according to the Florida Department of Financial Services, its owner was engaged in fraud and other misconduct.

37. KF&B routinely sold insurance to purchasers who did not provide appropriate financial information or motor vehicle records.

38. KF&B also failed to maintain appropriate loss control reports for the accounts it sold.

39. KF&B additionally failed to include appropriate endorsements on the policies it issued that would have facilitated AmTrust's cancellation of policies in instances where insureds did not comply with their deductible and collateral obligations.

40. For example, KF&B failed to include such an endorsement on the Bay Area Metro account.

41. AmTrust was damaged as a result of KF&B's misconduct. AmTrust anticipates losing in excess of $20.4 million in connection with the Program.

42. In addition to breaching its underwriting obligations, KF&B also failed to comply with its collateral and deductible-related obligations.

43. Because KF&B failed to secure appropriate collateral and because KF&B failed to take the required steps to collect deductibles, AmTrust has been unable to collect more than $3.7 million in deductible payments that it is owed from limousine and taxi companies that

KF&B sold AmTrust insurance to. AmTrust anticipates that certain of these limousine and taxi companies will be unwilling or unable to pay future deductible and collateral billings, increasing KF&B's damages.

44.     KF&B also made promises during the course of managing the Program that, on information and belief, KF&B failed to honor. For example, KF&B agreed that it would conduct a reevaluation of the collateral position of the policyholders it underwrote 9 months after issuing a policy. On information and belief, KF&B did not do so for many of the accounts it underwrote.

45.     KF&B's shoddy documentation practices allowed it to hide the full scope of its mismanagement from AmTrust for several years.

46.     Since the MPA was terminated on December 31, 2015, AmTrust has made multiple requests for KF&B to cooperate and support AmTrust in the collection and recovery of deductibles, as required by contract, and KF&B has failed to comply.

47.     KF&B's mismanagement of the Program has also caused AmTrust to suffer significant reputational damage. Since AmTrust is in the insurance business and what it sells is, in essence, a promise to pay money in certain circumstances, its reputation is of heightened importance. By damaging AmTrust's reputation, KF&B's misconduct damaged AmTrust above and beyond the $20.4 million that AmTrust anticipates losing on the Program.

48.     On May 16, 2017, AmTrust wrote to KF&B requesting that KF&B agree to indemnify AmTrust for its losses arising from the insurance policies that KF&B improperly sold as part of the Program. KF&B did not respond, in breach of its contractual and fiduciary obligations.

## FIRST CAUSE OF ACTION
(Breach of Contract)

49. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 48 as if fully set forth herein.

50. AmTrust and KF&B entered into the MPA, which incorporates by reference the Underwriting Guidelines and the AmTrust Policy Deductible Guidelines. The MPA constitutes a valid and binding contract that governs the terms of the duties imposed on KF&B in acting as program manager of the Program.

51. AmTrust fully performed its obligations under the MPA.

52. AmTrust has properly requested reimbursement from KF&B for indemnification owed pursuant to the MPA.

53. KF&B has failed to reimburse AmTrust for amounts owed pursuant to the MPA.

54. KF&B's conduct, including the conduct alleged herein, breached the MPA by, *inter alia*, (a) failing to comply with the Underwriting Guidelines and other underwriting requirements and prohibitions in the MPA and (b) failing to comply with the AmTrust Policy Deductible Guidelines and other collateral and deductible-related requirements and prohibitions in the MPA.

55. KF&B also breached its contractual commitment to "cooperate and support AmTrust in the collection and recovery of deductible security/collateral for all policies whether in-force or expired" following the termination of the MPA.

56. As a result of KF&B's contract breaches, AmTrust has suffered and continues to suffer damages in an amount to be proven at trial in excess of $20.4 million.

57. AmTrust also suffered additional damages based on the harm KF&B caused to AmTrust's reputation.

## SECOND CAUSE OF ACTION
(Breach of Fiduciary Duty)

58. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

59. As a result of its position as program manager for the Program, KF&B owed fiduciary duties to AmTrust.

60. KF&B's role as a fiduciary of AmTrust was expressly acknowledged by KF&B in the MPA.

61. Among other duties, KF&B owed a duty to deal with AmTrust with the utmost good faith and with absolute and undivided fidelity.

62. KF&B breached its fiduciary duties to AmTrust by putting its own interests ahead of AmTrust in connection with the Program.

63. For example, KF&B sold AmTrust insurance to risky and otherwise inappropriate customers in order to maximize its commissions. KF&B also failed to do appropriate due diligence into the customers it sold AmTrust insurance to.

64. As a result of KF&B's fiduciary duty breaches, AmTrust has suffered and continues to suffer damages in an amount to be proven at trial in excess of $20.4 million, plus reputational harm.

## THIRD CAUSE OF ACTION
(Declaratory Judgment)

65. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 64 as if fully set forth herein.

66. An actual controversy exists with respect to the parties' rights and obligations under the MPA and in connection with the Program generally, including but not limited to the

obligations of KF&B to reimburse AmTrust for past, current, and future losses in connection with the Program.

67. AmTrust is entitled to a declaration of its rights and KF&B's obligations with respect to the Program, including a declaration that KF&B is required to reimburse AmTrust for (i) its future losses arising from the policies that KF&B sold as part of the Program and/or (ii) deductibles and collateral that AmTrust is unable to collect from the policyholders in the Program that KF&B sold insurance to.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff AmTrust respectfully requests that the Court enter judgment in its favor and against KF&B as follows:

(a) A judgment that KF&B has breached the MPA;

(b) A judgment that KF&B has breached its fiduciary obligations to AmTrust;

(c) An award of money damages of at least $20.4 million, plus pre-judgment and post-judgment interest;

(d) A declaration of AmTrust's rights and KF&B's obligations with respect to the Program, including a declaration that KF&B is required to reimburse AmTrust for (i) its future losses arising from the policies that KF&B sold as part of the Program and/or (ii) deductibles and collateral that AmTrust is unable to collect from the policyholders in the Program that KF&B sold insurance to;

(e) Reasonable costs and attorneys' fees incurred in prosecuting this action; and

(f) Such other relief as the Court deems just and proper.

Dated: New York, New York.
June 9, 2017

**KASOWITZ BENSON TORRES LLP**

By: /s/ Michael J. Bowe
Michael J. Bowe
(mbowe@kasowitz.com)
Alexander B. Simkin
(asimkin@kasowitz.com)
1633 Broadway
New York, NY 10019
(212) 506-1700

*Attorneys for Plaintiffs
AmTrust North America, Inc.,
Wesco Insurance Company, Inc., and
Technology Insurance Company, Inc.*