UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMTRUST NORTH AMERICA, INC.,
WESCO INSURANCE COMPANY,
INC., and TECHNOLOGY INSURANCE
COMPANY, INC.,

                     Plaintiffs,

-v-

KF&B, INC.,

                     Defendant.

17-CV-5340 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

This case arises out of a dispute between an insurance company and its underwriter. Plaintiffs (collectively, "AmTrust") allege that Defendant KF&B breached its contractual and fiduciary duties as a program manager, and KF&B counterclaims that AmTrust breached an exclusivity clause in the parties' contract. AmTrust moves to dismiss the Amended Counterclaim. For the reasons that follow, the motion is denied.

I.     Background

In July 2011, AmTrust and KF&B entered into a contract for KF&B to serve as the program manager and underwriter for one of AmTrust's insurance programs. (Dkt. No. 22 ¶ 7.) The program, named the "KF&B Limousine and Taxi Program," sold insurance to taxi and limousine companies. (Dkt. No. 1-1 ¶ 1; Dkt. No. 22 ¶¶ 7, 13−15.) The parties' contract contained two parts: a main document titled "Managing Producer Agreement" ("MPA") and an additional document titled "Addendum to Managing Producer Agreement Number 1" ("Addendum"). (Dkt. No. 22-1.)

The parties amended the MPA and Addendum several times over the course of their contractual relationship. (Dkt. No. 22 ¶ 8.) In July 2012, the parties executed two more

1

documents: an "Amendment 1 to Managing Producer Agreement," which amended the MPA, and an "Endorsement to Managing Producer Agreement Number 1," which amended the Addendum. (Dkt. No. 22-2.) In July 2013, the parties again executed an "Amendment 2 to Managing Producer Agreement," amending the MPA, and an "Endorsement to Managing Producer Agreement Number 2" ("Endorsement 2"), amending the Addendum. (Dkt. No. 22-3.) The parties executed a third endorsement in July 2014.[1] (*Id.*)

KF&B's Amended Counterclaim (hereinafter, "Counterclaim") concerns an amendment to the "Program Name/Subject Business" section of the Addendum. Endorsement 2, Section 1 added the following paragraph to the Addendum:

> b. Effective as of July 1, 2013 forward, for AmTrust's Specialty Program segment:
>
>> i. [KB&F] is appointed as the dedicated program manager for Subject Business except in the states of Oregon and Washington.
>>
>> ii. [KB&F] will submit all Subject Business to AmTrust. If AmTrust declines any Subject Business, [KB&F] may place such declined business with a third party carrier.

(Dkt. No. 22-3 at 3 § 1.)[2]

But two important terms in Subsection 1.b are left undefined: "dedicated program manager" and "AmTrust's Specialty Program segment." (Dkt. No. 22-3 at 3 § 1; Dkt. No. 22 ¶ 12.) KF&B alleges that the parties intended to designate KF&B as "the exclusive program manager for the taxi and limousine book of business," and therefore meant "dedicated" to mean

---

[1] Where necessary, citations to these contract documents refer to ECF pagination.

[2] The MPA, as amended, defines "AmTrust" to include all three Plaintiff companies. (*See* Dkt. No. 22-1 at 2; Dkt. No. 22-3 at 2 ¶ 1). The Addendum also appears to define "Subject Business" as the "KF&B Limousine and Taxi Program." (Dkt. No. 22-1 at 14 § 1.)

2

"exclusive" and "AmTrust Specialty Program" to refer to the KF&B Limousine and Taxi Program. (Dkt. No. 22 ¶¶ 10, 13, 14.)

According to KF&B, AmTrust breached this exclusivity provision by "underwriting policies through sources other than KF&B." (Dkt. No. 22 ¶ 31.) First, in 2014, KF&B alleges that AmTrust purchased Tower Insurance Companies' book of business and began soliciting business under the "AmTrust Tower Special Underwriting Public Livery Program." (Dkt. No. 22 ¶¶ 16−23.) Second, KF&B alleges that in March 2015, AmTrust purchased Ari Mutual Insurance Company, "one of the top ten writers of commercial automobile insurance for taxis and limousine companies in New Jersey," and "refused to share information" with KF&B about "the business solicited and/or underwritten by or through" Ari Mutual. (Dkt. No. 22 ¶¶ 23−24.)

AmTrust filed suit against KF&B in New York state court in June 2017. (Dkt. No. 1-1.) KF&B removed the case to federal court[3] and filed an answer with counterclaims. (Dkt. Nos. 1, 9, 22.) AmTrust now moves to dismiss KF&B's Counterclaim for failure to state a claim upon which relief can be granted. (Dkt. No. 26.)

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim,

---

[3] Plaintiffs are all Delaware corporations with their principal places of business in New York. (Dkt. No. 1-1 ¶¶ 5−7; Dkt. No. 22 ¶¶ 2−4.) KF&B is a California corporation with its principal place of business in California. (Dkt. No. 1 ¶ 5; Dkt. No. 22 ¶ 1.) Therefore, all Plaintiffs are citizens of different states than KF&B, and this Court exercises diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332.

*Iqbal*, 556 U.S. at 678, courts must nevertheless "accept as true all of the factual allegations contained in the complaint," *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)), and must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Because the MPA, Addendum, and all relevant amendments and endorsements are attached as exhibits to the Counterclaim (*see* Dkt. Nos., 22-1, 22-2, 22-3), the Court may consider them at the motion-to-dismiss stage. *See Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014).

## III. Discussion

AmTrust makes two arguments for dismissal: first, that the MPA and Addendum, as amended, do not include an exclusivity provision, and second, that even if the contract does require exclusivity, the Counterclaim does not allege any conduct that would violate such a provision.

### A. The Existence of an Exclusivity Provision

Under New York law,[4] "[t]he threshold question of whether a contract is ambiguous is a question of law for the Court." *SPCP Grp., LLC v. Eagle Rock Field Servs., LP*, No. 12 Civ. 3610, 2013 WL 359650, at *6 (S.D.N.Y. Jan. 30, 2013). "A contract is unambiguous if 'on its face it is reasonably susceptible of only one meaning.'" *Banco Espirito Santo, S.A. v. Concessionaria Do Rodoanel Oeste S.A.*, 951 N.Y.S.2d 19, 24 (App. Div. 1st Dep't 2012) (alteration omitted) (quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 570 (2002)).

---

[4] Pursuant to a choice-of-law clause in the MPA, the Court applies the law of the State of New York to this action. (*See* Dkt. No. 22-1 at 13 § XXIV.)

4

"[C]onstruction of an unambiguous contract is a matter of law, which may be determined by the Court on a motion to dismiss." *SPCP Grp.*, 2013 WL 359650, at *6.

In contrast, "[a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Banco Espirito Santo*, 951 N.Y.S.2d at 24 (alteration in original) (quoting *New York City Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 809 N.Y.S.2d 70, 73 (App. Div. 1st Dep't 2006)). "Ambiguity is determined by looking within the four corners of the document, not to outside sources," *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (quoting *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009)) (internal quotation marks omitted), and "[a] contract is not ambiguous merely because the parties to a litigation disagree about its interpretation," *SPCP Grp.*, 2013 WL 359650, at *6. When a court does conclude that a contract is ambiguous, "a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004); *see also Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012).

KF&B's Counterclaim hinges on the meaning of Endorsement 2, Subsection b.1.i: "[F]or AmTrust's Specialty Program segment . . . [KB&F] is appointed as the dedicated program manager." (Dkt. No. 22-3 at 3 ¶ 1.) The parties sharply disagree about the meaning of this sentence.

AmTrust argues that Subsection 1.b.i does not create an exclusivity provision for two reasons. First, the MPA states that "AmTrust appoints [KB&F] . . . on a non-exclusive basis," and Endorsement 2 states that "the terms and conditions of the Managing Producer Agreement shall remain and continue in full force" "except as expressly modified herein." (Dkt. No. 22-1 at

5

1 § II.A; Dkt. No. 22-3 at 5.) Under AmTrust's interpretation, Subsection 1.b.i does not contain any language "expressly" modifying the MPA; indeed, Endorsement 2 amends only the Addendum—not the MPA itself. (*See* Dkt. No. 27 at 10−12.) Second, AmTrust argues that the meaning of "dedicated program manager" is revealed by Subsection 1.b.ii (the sentence immediately following Subsection 1.b.i), which obligates KB&F to "submit all Subject Business to AmTrust." (Dkt. No. 22-3 at 3 § 1.b.ii.) AmTrust argues that AmTrust has exclusive rights to KB&F's business—not the other way around. (Dkt. No. 27 at 12.)

AmTrust's interpretation may be the more natural reading of the contractual language, but KF&B offers plausible arguments for an alternative interpretation. First, KF&B argues that "dedicated" should be given its ordinary meaning and offers the Oxford English Dictionary's definition of "dedicated" as "exclusively allocated to or intended for a particular purpose." (*See* Dkt. No. 33 at 8−9.) Second, KF&B argues that the phrase "non-exclusive basis" in the MPA is trumped by the phrase "dedicated program manager" in Endorsement 2. Indeed, despite the MPA's requirement that amendments be "express," the MPA also states that "[t]o the extent that any . . . amendment . . . changes the terms of this Agreement, the provisions of such . . . Amendment shall control." (Dkt. No. 22-1 at 12 § XXII.) KF&B further argues that it is of no consequence whether Endorsement 2 amends the Addendum or the MPA because, per the MPA, "each Addendum shall be incorporated into [the MPA], and shall, together with the terms of this Agreement, constitute an insurance program." (Dkt. No. 22-1 at 2 § I.A.)[5]

---

[5] The Court also cannot conclude that Subsection 1.b.ii unambiguously defines the term "dedicated program manager," as used in the prior sentence. Indeed, it would be reasonable to interpret Subsection 1.b.ii as imposing a separate exclusivity obligation on KF&B—perhaps, even, one that reciprocates Subsection 1.b.i's exclusivity obligation on AmTrust.

Having reviewed the parties' arguments, the Court concludes that the contract cannot be deemed unambiguous on its face. The disputed Subsection 1.b.i "is capable of more than one meaning when viewed objectively . . . [in] the context of the entire integrated agreement." *Lockheed Martin*, 639 F.3d at 69. Therefore, the Court cannot dismiss the Counterclaim for lack of an exclusivity clause. Whether the MPA and Addendum should be interpreted to include such a provision is properly the subject of discovery.

B. **Actions that Would Violate an Exclusivity Provision**

AmTrust argues in the alternative that even if it did agree to give KB&F some sort of exclusivity right, none of AmTrust's alleged conduct violates that purported commitment. (Dkt. No. 27 at 13−18.) In particular, AmTrust argues (1) that KB&F failed to allege conduct by the "AmTrust Specialty Program segment" (*see* Dkt. No. 27 at 15−16), and (2) that KB&F alleges only that AmTrust purchased insurance-selling businesses and solicited additional clients, but not that AmTrust actually sold any insurance policies (*see* Dkt. No. 27 at 16−17).

The Court need not dwell on these arguments. Having concluded that the meaning of Subsection 1.b.i is ambiguous, the Court could not also conclude that Subsection 1.b.i unambiguously sanctions AmTrust's alleged conduct. The meaning of "AmTrust Specialty Program segment" is not at all clear from the four corners of the contract; neither is whether a "dedicated program manager" gets the exclusive right to solicit business. "[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim." *Eternity Glob. Master Fund*, 375 F.3d at 178.

Finally, AmTrust argues that its acquisition of ARI Mutual cannot give rise to liability because ARI Mutual was purchased in January 2016, after the MPA's termination in August 2015. (Dkt. No. 27 at 17−18.) But the Counterclaim alleges that AmTrust acquired ARI Mutual

7

in March 2015 (*see* Dkt. No. 22 ¶ 23), and the Court is constrained to accept KF&B's allegations as true on AmTrust's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, AmTrust's motion to dismiss the Amended Counterclaim is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 26.

SO ORDERED.

Dated: June 11, 2018
       New York, New York

_____
J. PAUL OETKEN
United States District Judge