```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
AMTRUST NORTH AMERICA, INC., et al.,                             :
                                                                 :
                              Plaintiffs,                        :
                                                                 :           17-cv-5340 (LJL)
          -v-                                                    :
                                                                 :           OPINION & ORDER
KF&B, INC.,                                                      :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/14/2020

LEWIS J. LIMAN, United States District Judge:

Defendant KF&B, Inc., d/b/a KF&B Program Managers Insurance Services, ("KF&B" or "Defendant") moves for summary judgment on claims brought by Plaintiffs AmTrust North America, Inc., Wesco Insurance Company, Inc., and Technology Insurance Company, Inc. (collectively, "AmTrust" or "Plaintiffs") that Defendant breached its Managing Producer Agreement ("MPA") with Plaintiffs by failing to maintain the underwriting files.

Plaintiffs allege that they hired KF&B to operate as the program manager for an insurance program known as the KF&B Limousine and Taxi Program (the "Program"). Dkt. No. 1-1 ("Complaint") ¶ 1. The Complaint alleges, among other things, that KF&B breached the MPA by engaging in "shoddy documentation practices." *Id.* ¶ 45. In particular, as has been elaborated during the course of the litigation, Plaintiffs complain that Defendant violated Section X.B. of the MPA. That section provides, in relevant part:

> Producer [KF&B] will maintain in its office an underwriting file for each risk written containing the following information as applicable under a Program:
> Section I.  Policy: copy of policy endorsements, cancellations, forms, notices, and renewals;
> Section II.  Correspondence and worksheet of account activity;

> Section III.  Account underwriting and pricing documentation worksheet, ACORD application, binder, financial information, loss control reports, schedule rating worksheets, experience mod sheets, all other documentation demonstrating compliance with eligibility requirements and Underwriting Guidelines of AmTrust;
> Section IV.  Rating worksheet;
> Section V.  Loss data reports; and
> Section VI.  Miscellaneous, including certificates of insurance, audits, copy of account invoice, premium finance notices, facultative reinsurance certificates, and any other documents as may be required by a Program.

Dkt. No. 115-3 ("Ex. B"), Section X.B.

A separate section of the MPA relates to the maintenance of books and records.  It provides:

> Producer [KF&B] shall maintain true and correct financial and insurance records for all business produced under this [MPA]. Such information shall include all books, records, reports, electronic files, and documents with respect to a Program including policyholder information, Premium records, policy registers, all policies, underwriting files, accounting records, complaint logs, and all reports and records required to be retained in connection with a Program, or required under applicable law (Records).
> . . . .
> All Records shall be maintained in accordance with generally accepted accounting principles and with regulatory requirements, and shall be complete, accurate and up-to-date for each Program, and shall be kept in a manner and form required by AmTrust to be compatible with AmTrust's internal systems. AmTrust and its duly authorized representatives shall have authority at any time to conduct an onsite review of Producer's operations, including the inspection, duplication and audit of all Records. This right shall survive the termination of this Agreement. The Records shall be maintained for each Program for a period of five (5) years after termination of the last obligations under a Program. At the end of five (5) years, or sooner upon AmTrust's request, Producer shall send to AmTrust, at Producer's expense, the originals of all such Records.
> . . . .
> With respect to all information maintained in electronic form, Producer is responsible for maintaining the security and integrity of such Records, and of AmTrust's systems.

*Id.*, Section IX.

The relevant facts are not in dispute.  KF&B did not keep a discrete underwriting file for each risk written, located in a single physical location and limited to the documents and

information set forth in Section X.B.  From the Program's inception in July 2011 through its termination in 2015, KF&B used several systems to store the electronic information that was part of the underwriting file and associated with the Program including: (1) the "Agent Aid" agency management system; (2) tape backups of emails which were hosted by KF&B on its own server from 2011 to January 26, 2015; and (3) emails hosted by Applied Systems beginning on January 26, 2015 and archived by Message Watchers on or after April 15, 2015.  Dkt. No. 115-6 (Ex. E) ¶ 4.  KF&B largely maintained the underwriting documents for limousine accounts in electronic form in Agent Aid, a proprietary software database housed separately on backup tapes of the email server.  Dkt. No. 116 at 4-5.  For taxi accounts handled by Mike Howery, the lead taxi underwriter for KF&B, out of his home office in Florida, underwriting documentation (aside from emails) was kept on a separate KF&B server.  *Id.* at 6.

In July 2019, AmTrust filed a supplemental disclosure pursuant to Fed. R. Civ. P. 26(a) and 26(e) identifying its claimed damages.  The supplemental disclosure claimed two categories of damages.  The first category was for $45,566,867.96 in losses allegedly resulting from KF&B's purported violation of Underwriting Guidelines for 25 accounts.  Dkt. No. 115-8 ("Ex. G") at 3.  The alleged losses are based on a tabulation of individual accidents in the Program.  *Id.*; *see* Dkt. No. 115-9 (Ex. H).  The second category of damages was for $5,019,149.29 in policy deductibles and deductible collateral that AmTrust claimed it was unable to collect from policyholders for 11 accounts.  Ex. G at 3.

The parties argue extensively over the interpretation of Section X.B. of the MPA and whether KF&B's practices satisfied that section.  Defendant argues that "underwriting file" under the MPA is defined by its content in Section X.B. and not by its location and that Section IX of the MPA contemplates that certain information will be "maintained in electronic form,"

3

while other information will be in hard copy form.  It thus contends that the MPA necessarily contemplates that the information that constitutes the underwriting file may be maintained in separate locations or in separate media.  It notes the MPA does not use the word "discrete."  For its part, AmTrust highlights the reference in Section X.B. to a "file," and points to a dictionary definition that a file is "a folder or box for holding loose papers that are typically arranged in a particular order for easy reference."  Dkt. No. 136 at 59 (quoting Lexico.com, available at https://www.lexico.com/en/definition/file).  AmTrust contends that the MPA does not permit KF&B to keep a "jumbled, *ad hoc* mass of hundreds of thousands of documents" as the underwriting file.  *Id.*[1]  According to Plaintiffs, the underwriting file must contain separate discrete sections corresponding to each category of information set forth in Section X.B.

The parties also argue over whether AmTrust's awareness of how KF&B kept its records and AmTrust's decision to renew the program without any complaint or direction to KF&B to change its method of storage constitutes ratification and excuses any breach of the agreement.  Defendant offers evidence that AmTrust was aware of KF&B's use of multiple systems and had access to Agent Aid and documents sent to AmTrust by KF&B.  *See* Dkt. No. 115-24 ("Ex. W," Fort Dep.) at 21:24-22:34, 24:10-26:9, 47:6-14, 48:2-6, 126:15-127:4.  AmTrust responds that "the record is devoid of any evidence that AmTrust was aware that there were thousands of additional e-mails and account-related records which were never saved to Agent Aid or maintained in a discrete file" and, that in the absence of knowledge of all material facts, there cannot be ratification.  Dkt. No. 136 at 65 (citing *DiPizio Const. Co. v. Erie Canal Harbor Dev. Corp.*, 23 N.Y.S.3d 762, 764 (4th Dep't 2015)); *see* 57 N.Y. Jur. 2d Estoppel, Etc. § 95 (2d ed. 2020) ("Ratification is the act of knowingly giving sanction or affirmance to an act that would

---

[1] Despite Plaintiffs' hyperbole, they offer no evidence that the records were jumbled or ad hoc.

4

otherwise be unauthorized and not binding"); *see also LNC Invs. Inc. v. First Fidelity Bank, N.A. N.J.*, 173 F.3d 454, 463 (2d Cir. 1999).  AmTrust also argues that any ratification is precluded by Section XXII of the MPA, which provides that "[t]he failure of AmTrust or [KF&B] to enforce any obligation under this Agreement shall not constitute a waiver of any right under the Agreement, nor shall past waiver of any provision constitute a course of conduct or a waiver in the future of the same provision." Ex. B, Section XXII.

Federal Rule of Civil Procedure 56(a) provides that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party may satisfy this burden by demonstrating to the court that there is an absence of evidence to support the responding party's case on the points for which the responding party has the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The responding party must come forward with specific facts "to establish the existence of [every] element essential to that party's case," and for which the responding party "will bear the burden of proof at trial." *Id.* at 322.  Judgment must be entered against any party that fails to establish the existence of any essential element of their case. *Id.* "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To establish a claim for breach of contract under New York law, a plaintiff must prove: (1) the existence of the contract; (2) plaintiff's performance; (3) breach by the defendant; and (4) damages.  *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 2005 WL 832050, at *2 (S.D.N.Y. Apr. 12, 2005) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1980)); *see*

*also Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach."). "Under New York law, causation is 'an essential element of damages in a breach of contract action.'" *NAF Holdings, LLC v. Li & Fung (Trading) Limited*, 2016 WL 3098842, at *6 (S.D.N.Y. June 1, 2016) (quoting *Nat'l Mkt. Share*, 392 F.3d at 525). Damages are also an "essential element" of Plaintiff's cause of action for breach of fiduciary duty. *R.M. Newell Co. v. Rice*, 653 N.Y.S.2d 1004, 1005 (4th Dep't 1997); *see also LNC Invs. Inc.*, 173 F.3d at 464-65.

   The Court finds it unnecessary to determine who has the better of the argument on the interpretation of the MPA or whether Defendant has satisfied its burden with respect to ratification. Even if Defendant's maintenance of the underwriting files failed to satisfy Section X.B., Plaintiffs have offered no evidence that such alleged breach caused any of the damages it seeks in this case. At most, Plaintiffs refer to the reports of their expert, Donald Bendure, which contain the *ipse dixit* that the failure to maintain discrete account specific underwriting files precluded Defendant from properly performing the underwriting and monitoring functions assigned to it under the MPA, *see* Dkt. No. 115-13 (Ex. L, Bendure Expert Report) ¶¶ 14, 28, 78-79, 82, and deprived AmTrust of critical information it needed to properly assess accounts referred to it and otherwise evaluate Defendant's underwriting and rating decisions during the pendency of the Program, *see* Dkt. No. 135-75 (Ex. 75, Bendure Rebuttal Expert Report) ¶¶ 15-18. Those assertions are insufficient to create a genuine issue of material fact.

   Plaintiffs' claims for damages in this case are limited to the losses incurred in connection with 25 accounts as to which Plaintiffs claim there were underwriting deficiencies and the 11 accounts as to which Plaintiffs claim there were outstanding deductibles and open reserves. Of

6

those 25 accounts, 17 were submitted to AmTrust's underwriters for their review and approval prior to quoting or binding any insurance.  But Plaintiffs identified no evidence whatsoever that any alleged failure with respect to maintenance of the underwriting files deprived AmTrust of information it had requested or needed with respect to those accounts.  To the contrary, the uncontested evidence on this record is that AmTrust received from KF&B all of the information that it requested and said it needed to make an informed decision to approve an account or a quote.  *See* Ex. W at 47:6-11, 48:2-6, 176:20-177:5; Dkt. No. 115-23 (Ex. V, Hynes Dep.) at 79:21-80:13, 116:24-117:13.

As to Mr. Bendure's assertion that the failure to maintain discrete account specific underwriting files prevented Defendant from properly performing the underwriting and monitoring obligations otherwise assigned to it under the MPA, that assertion—besides being conclusory—is otherwise insufficient to create a genuine issue of fact.  Either KF&B failed to fulfill the underwriting and monitoring obligations elsewhere assigned to it under the MPA and such failure caused damages or it did not.  If KF&B satisfied its underwriting and monitoring obligations notwithstanding (or maybe because of) how it chose to maintain its files, it will not be in breach.  And if KF&B violated those underwriting and monitoring obligations, it will be irrelevant whether it did so because of how it chose to maintain its files or for some other reason.  In either event, Plaintiffs have failed to offer evidence of a freestanding violation of Section X.B. that caused it damages.  Plaintiffs have thus failed to establish the existence of any type of damages with reasonable certainty. [2]

---

[2] Nor have Plaintiffs even attempted to respond to KF&B's arguments regarding damages resulting from its alleged failure to maintain the underwriting files, indicating that they have since abandoned the argument.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (plaintiff abandoned claims by failing to argue that they should survive the motion for summary judgment).

Defendant's motion for summary judgment on maintenance of the underwriting files is hereby GRANTED. The Clerk of Court is respectfully directed to close Dkt. No. 115.

SO ORDERED.

Dated: September 14, 2020
New York, New York

LEWIS J. LIMAN
United States District Judge