USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
AMTRUST NORTH AMERICA, INC., et al.,                                   :
                                                                       :
                            Plaintiffs,                                :
                                                                       :          17-cv-5340 (LJL)
            -v-                                                        :
                                                                       :          MEMORANDUM & ORDER
KF&B, INC.,                                                            :
                                                                       :
                            Defendant.                                 :
                                                                       :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant KF&B, Inc., d/b/a KF&B Program Managers Insurance Services, ("KF&B" or "Defendant") moves to strike the following portions of witness declarations submitted by Plaintiffs AmTrust North America, Inc., Wesco Insurance Company, Inc., and Technology Insurance Company, Inc. (collectively, "AmTrust" or "Plaintiffs"): (1) portions of the declaration of Mark Murphy ("Murphy") that are either inconsistent with his deposition testimony as Plaintiffs' Fed. R. Civ. P. 30(b)(6) representative, or that improperly provide lay opinion testimony on both the interpretation of the contract at issue and the legal responsibilities of the parties; (2) opinions of Plaintiffs' expert Donald Bendure ("Bendure") inconsistent with, or not previously disclosed in, his expert reports or his deposition testimony; and (3) the declaration of Michael Scruggs ("Scruggs") that was offered by Plaintiffs solely as actuarial rebuttal witness testimony and which is not based on adequate facts or data and applies methodologies not generally accepted in the insurance industry.  *See* Dkt. Nos. 162, 165.

The following constitutes the rulings of the Court.

A.     **Mark Murphy Declaration**

The motion to strike the declaration of Mark Murphy is denied. The Court declines to strike the testimony of Mr. Murphy on the grounds that it is inconsistent with testimony that he gave on behalf of Plaintiffs as their Rule 30(b)(6) witness.

The Second Circuit has held that Rule 30(b)(6) testimony "is 'binding' in the sense that whatever its deponent says can be used against the organization . . . [b]ut Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015); *see Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, 2008 WL 4129620, at *21 (S.D.N.Y. Sept. 4, 2008) ("It is true that a corporation is 'bound' by its Rule 30(b)(6) testimony, in the same sense that any individual deposed under Rule 30(b)(1) would be 'bound' by his or her testimony. All this means is that the witness has committed to a position at a particular point in time. It does not mean that the witness has made a judicial admission that formally and finally decides an issue. . . . Evidence may be explained or contradicted.") (citation omitted); *accord L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 2006 WL 988143 at *9 n.14 (S.D.N.Y. April 13, 2006); *see also* 2 Michael Silberberg & Edward M. Spiro, Civil Practice in the Southern District of New York § 16:5 (2d ed. 2020) ("[T]he fact that the testimony binds the designating party does not mean that such testimony constitutes a judicial admission which cannot be refuted through contrary evidence. Testimony commits a witness to a position, but such evidence may either be explained or contradicted through other evidence."). "Of course, a party whose testimony 'evolves' risks its credibility, but that does not mean it has violated the Federal Rules of Civil Procedure." *Keepers*, 807 F.3d at 34.

The remainder of Defendant's objections go to whether Mr. Murphy is offering impermissible lay opinion testimony on questions of law and whether his current testimony is

2

incorrect or contradicts prior testimony offered by him or others. There are also objections as to relevancy and that his testimony is not based on his personal knowledge. "In the context of a bench trial where there is not a concern for juror confusion or potential prejudice, the court has considerable discretion in admitting the proffered testimony at the trial and then deciding after the evidence is presented whether it deserves to be credited." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 457 n.1 (S.D.N.Y. 2007); *see also Am. Railcar Indus., Inc. v. Gyansys, Inc.*, 2017 WL 11501880, at *1 (S.D.N.Y. May 8, 2017); *Lehman Bros. Holdings v. United States*, 2014 WL 715525, at *2 (S.D.N.Y. Feb. 24, 2014).

The Court will admit all of Mr. Murphy's testimony without prejudice to a motion to strike at the conclusion of trial if Defendant believes that the testimony really merits a motion to strike.

**B.    Donald Bendure Declaration**

The motion to strike the declaration of Donald Bendure is granted in part and denied in part.

Defendant moves to strike Mr. Bendure's testimony regarding the applicability of ISO Rule 5J2 (and an alleged error regarding ALAE) and the inclusion of a detrend factor within the actuarially constructed formula for calculating loss.[1] *See* Dkt. No. 162-2 at 30 (citing Bendure Decl. ¶¶ 111-16 and 236). The Court grants the motion to strike those paragraphs. Mr. Bendure testified during his January 22, 2020 deposition that he was abandoning a prior opinion expressed in his expert reports that KF&B used contrived losses to calculate the Experience Modification Factor ("EMF") for several accounts, but Mr. Bendure stated that he "came to the right conclusion about the experience rating models, but for slightly different reasons." Bendure

---

[1] ALAE stands for "Allocated Loss Adjustment Expenses."

3

Dep. at 236:9-237:4.  He expressed the new opinion that KF&B "completely ignored ALAE, and they also squared the detrend factor." *Id.* at 237:8-23.  He added, "I subscribe to the Scruggs report that the ALAE was the mistake, rather than the losses.  So I came to the right conclusion, but for the wrong reasons." *Id.* at 239:20-24.  He added that he was unfamiliar with ISO Rule 5J2—which Mr. Scruggs testified was the source of the error—when he rendered his initial opinion and that, rather than offering an opinion of his own, "I'm just going to defer to Mike [Scruggs] on that." *Id.* at 240:7-241:9.  Plaintiffs do not dispute that Mr. Bendure's expert and rebuttal reports do not make reference to ISO Rule 5J2 or ALAE.  They point out that there is a footnote in the Bendure rebuttal report that mentions the detrend factor but that cursory reference is in the context of how it was used in the EMF and not in the new context of improperly squaring the detrend factor.  It is not an opinion.

  Fed. R. Civ. P. 26(a)(2) provides that when a written witness report is required, as here, it must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  When an expert fails to include an opinion in his report, the Court may exclude the opinion from trial "unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006).  In determining whether preclusion is appropriate, a court is directed to consider: (1) the party's explanation for the failure to disclose; (2) the importance of the evidence to be precluded; (3) the prejudice suffered by the opposing party if the evidence were not precluded; and (4) the possibility of a continuance.  *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

  Plaintiffs offer no sufficient justification for the failure to disclose.  That Mr. Bendure did not know of what he now claims is an error until after he read a rebuttal expert report is plainly

4

not sufficient. The evidence sought to be precluded has some significance but that fact cuts both ways. It also highlights the prejudice to Defendant. And, as to the prejudice against Defendant, it is severe. Plaintiffs offer that Mr. Bendure stated during his deposition that he was adopting Mr. Scruggs's opinion, but that plainly was too little, too late. Opinions are supposed to be disclosed in expert reports. This rule is intended to ensure that the party opposing an expert has his report, and the assumptions forming the bases for that report, before the deposition so that the deposition can be effective and counsel can develop material to probe the witness during cross-examination. *See Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ("An expert cannot testify on a matter not disclosed in his preliminary report"; otherwise, "it would undermine the rationale for requiring the report in the first instance: to provide sufficient notice of an expert's testimony so that the opposing party may prepare for cross-examination or rebuttal"); *see also LaSalle Bank Nat. Ass'n v. CIBC Inc.*, 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012). Expert witnesses may mention a number of different things in deposition. The opposing party is entitled to assume—as the Rules require—that the only opinions that the witness will express are those reflected in his reports, as amended. Rule 26(e) explicitly provides that the duty to supplement an expert report applies to "information given during the expert's deposition" precisely for this reason. Fed. R. Civ. P. 26(e)(2); *see* 8A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2020). If a party does not amend its report based on information given during the deposition, the opposing party is entitled to assume that the report is not being amended. The testimony was also too little. When asked during the deposition whether he would be offering his own opinion—a question that if answered affirmatively would have led to more questioning about the basis of that opinion—Mr. Bendure demurred. He stated he was relying on Mr. Scruggs for his opinion, thus cutting off further

inquiry.  It does not cure the prejudice to Defendant that Mr. Scruggs expressed an opinion in a rebuttal report.  Defendant was entitled to rely on Plaintiffs' representation that it did not intend to offer the opinion in its case-in-chief and would not be able to offer it if there was nothing for Mr. Scruggs to rebut.

Finally, at this late stage, a continuance is not a viable alternative and, in any event, Plaintiffs have not suggested it.  This case has been pending since July 2017 and trial is scheduled to begin on September 21, 2020.  Had Plaintiffs intended to have Mr. Bendure offer the new opinions in its case-in-chief, there would have been time enough to amend the expert reports.   Plaintiffs did not.  In short, having chosen not to have Mr. Bendure express his own opinion about ALAE, and having chosen to designate Mr. Scruggs only as a rebuttal witness, it would be an unfair bait-and-switch now to permit Plaintiffs to offer into its case-in-chief evidence that they intended to offer only on rebuttal.  There may be leeway in bench trials, but that leeway does not extend to permitting a party to prejudicially disregard orders and rules in a way that disadvantages the other side.  Moreover, in both relying on Mr. Scruggs's opinion at deposition rather than expressing his own opinion and testifying that he had no expertise on ISO Rule 5J2, Mr. Bendure has denied Defendant the opportunity to effectively cross examine him and challenge his opinion.  *See, e.g.*, *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017) ("If an expert simply presents the findings and experts opinions of others, that expert must be independently qualified in the subject."); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) ("[T]he expert witness must in the end be giving his own opinion.").

Defendant also moves to strike Mr. Bendure's testimony regarding Defendant's knowledge of the so-called 2011-2014 Rating Model error.  *See* Dkt. No. 162-2 at 30 (citing

6

Bendure Decl. ¶¶ 102, 106-07). The Court grants the motion to strike those paragraphs for the same reasons as above, and also because they are unhelpful to the factfinder and express an opinion as to state of mind that invades the province of the Court and asks the Court what inferences to draw from the testimony. Specifically, those paragraphs express the opinion that KF&B would have seen the 2011-2014 Rating Model error, that it was likely aware of the deficiency from its prior use of the model with Praetorian, that KF&B ignored its basic fiduciary, contractual, and professional duties of care, and that KF&B knew all along that the model was wrong. Not only are those opinions new and thus violative of Rule 26(a)(2), but they also express ultimate conclusions of law and are not well-founded on Mr. Bendure's professional expertise. The Court can draw its own inferences from the evidence. It does not need Mr. Bendure's help.

Defendant further asks the Court to strike Mr. Bendure's reference to emails pertaining to five accounts that are not part of the 25 taxi accounts constituting AmTrust's claimed damages in this action. *See* Dkt. No. 162-2 at 31 (citing PX-018, PX-019, PX-20, PX-26, PX-27). The Court grants the motion and strikes the exhibits under Fed. R. Evid. 403. Plaintiffs have made no effort to link the referenced emails or the alleged violations they purportedly reflect either to the deficiencies alleged in the subject accounts, or to the damages claimed in this case—and to the extent Plaintiffs do make any such effort, the evidence would be cumulative. Defendant has pointed out that Plaintiffs have focused on 25 of the nearly 1,500 taxi and limousine accounts serviced by KF&B between 2011 and 2015 in the Program. If Plaintiffs can offer evidence (which is attenuated and would require testimony and explanation) of flaws with respect to five accounts, that would open the door to testimony of Defendant with respect to how it handled the many other accounts and as to why no inferences should be drawn from the five accounts.

7

Plaintiffs have offered no sufficient justification for the Court to engage in such a lengthy tangent.

The Court will receive the remainder of Mr. Bendure's declaration subject to a motion to strike and with the caveat that it does not necessarily credit it and is not prejudging the ultimate outcome of a motion to strike under Fed. R. Evid. 702.  "Particularly in a bench trial, '[v]igorous cross-examination, presentation of contrary evidence, and careful . . . [attention to] the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Assured Guar. Mun. Corp. v. Flagstar Bank, FSB*, 920 F. Supp. 2d 475, 502 (S.D.N.Y. 2013) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).  That may be so even when the evidence comes close to or crosses the line of inadmissibility.  *See, e.g.*, *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, 2011 WL 3874878, at *2 (S.D.N.Y. Aug. 31, 2011) ("When the fact-finder is the court, expert evidence should be quite freely admitted so that the judge may have the benefit of live testimony and cross-examination to determine how much weight, if any, to give to the expert's conclusions.") (quotation marks and citation omitted); *see also Van Alen v. Dominick & Dominick, Inc.*, 560 F.2d 547, 552 (2d Cir. 1977) ("[O]rdinarily it may be the more prudent course in a bench trial to admit into evidence doubtfully admissible records, and testimony based on them . . .").

Defendant contends that Mr. Bendure is not qualified to opine on actuarial issues.  But, with the exceptions of the testimony regarding the applicability of ISO Rule 5J2 and ALAE and the new opinion regarding the inclusion of the detrend factor, Defendant has known of Mr. Bendure's opinions and has had the opportunity to cross examine him and will have the opportunity to do so again.  The Court will be in a better position to judge Mr. Bendure's

qualification including—if Defendant is right—to dismiss his opinions or exclude them after hearing from him at trial.

Defendant also argues that Mr. Bendure seeks to invade the province of the Court as the sole arbiter of the law by inferring KF&B's responsibilities. But Plaintiffs are correct that when a contract uses terms such as the "highest standards of the industry," Dkt. No. 109-3, Section II.B. (MPA), it is proper for an expert to opine on the customs and standards of the industry. *See Lippe v. Bairnco Corp.*, 2002 WL 15630, at *2 (S.D.N.Y. Jan. 7, 2002). In a bench trial, the Court is able to distinguish between issues of law that are exclusively for it and issues of industry practice that are questions of fact. The Court is also able to determine whether testimony on industry practice is based on a substantial enough basis of experience and to discount such testimony if it is not.

Defendant further complains about certain statements in Mr. Bendure's declaration, specifically his statements that "there was little to no written underwriting analysis performed for the accounts in question" and "KF&B was not actually attempting to properly underwrite this business but was instead pursuing its own self-interested objective of maximizing premiums irrespective of whether doing so was authorized by a proper application of the Underwriting Guidelines." Bendure Decl. ¶ 66. It also complains about the individual account opinions based on that general opinion. According to Defendant, the opinions all stem from the identical methodological flaw: Mr. Bendure relied on worksheets and charts compiled by consulting experts retained by AmTrust and its counsel and on associated account-specific documentation referenced in such worksheets and charts without conducting an independent review of the documents produced in this litigation. *See* Bendure Decl. ¶¶ 63-64. Plaintiffs respond that these critiques are "rich" because Mr. Bendure's failure to review all the documents produced in this

9

litigation is a function of what Plaintiffs claim is the disorganized manner in which Defendant maintained its files. Dkt. No. 175 at 11.

However, the Court previously has rejected Plaintiffs' arguments that they were deprived of the opportunity to timely to review the underwriting files. Any difficulty Plaintiffs had with the documents they received was a problem of their own manufacture based on how they requested those documents. The Court also has rejected Plaintiffs' argument and dismissed their claim that any alleged failure to keep the underwriting files in the manner that Plaintiffs claim was required by the MPA is an independent violation or breach that caused Plaintiffs damages. Plaintiffs failed to offer evidence that created a genuine issue of fact as to that issue. That does not mean, however, that evidence of how Defendant kept its records is irrelevant to the question of whether it violated underwriting standards or its other obligations under the MPA, or that Plaintiffs cannot offer evidence on that issue. Nor does it mean that the Court must exclude Mr. Bendure's testimony regarding what he found based on the spreadsheets prepared for him. Defendant may cross examine him, including on the flaws in his methodology, the instructions he gave to counsel with respect to documents he wanted to see, and what documents he might have overlooked. Defendant has pointed out, for example, that Mr. Bendure reviewed only 96 of the 8,400 documents related to the ASC account. If that is right, the critique goes more to weight of the evidence at this stage than admissibility—again, subject to a motion to strike at the conclusion of trial.

Defendant next argues that Mr. Bendure offers impermissible opinions as to state of mind. Defendant is correct that, as a general matter, experts may not offer opinions regarding state of mind, intent, or motive as part of their analysis. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *see also Scott v. Chipotle Mexican Grill, Inc.*, 315

F.R.D. 33, 45-46 (S.D.N.Y. 2016). But the Court is also able to discern what qualifies impermissible expert testimony on state of mind. The Court thus will not exclude the testimony now, but it intends to disregard such testimony during the trial.

Finally, Defendant complains about new expert opinions. With the exception of the opinions that the Court strikes above, the Court concludes that the opinions are sufficiently referenced in the expert reports that Defendant cannot claim surprise, and where experts express opinions as to state of mind, the Court will disregard them for other reasons.

**C.      Michael Scruggs Declaration**

The motion to strike the declaration of Michael Scruggs is granted.

Defendant moves to strike Mr. Scruggs's testimony on several grounds, but the Court focuses on its arguments that Mr. Scruggs was designated solely as a rebuttal witness and thus cannot be offered as part of Plaintiffs' case-in-chief and that Mr. Scruggs's opinion must be confined solely to rebutting the opinion of Defendant's actuarial expert. *See* Dkt. No. 162-2 at 32-35. Significantly, Mr. Scruggs's opinion on damages was not previously disclosed, and Defendant asserts that Plaintiffs use his testimony to buttress Mr. Bendure's expert opinion on damages, rather than as rebuttal testimony.

Defendant's arguments are well-taken. As Plaintiffs note through the cases they cite, the Court has "ample discretion" whether to permit the rebuttal witness. *See* Dkt. No. 175 (citing *Triboro Quilt Mfg. Corp. v. Luve LLC*, 2015 WL 5474184, at *4 (S.D.N.Y. July 24, 2015)). In this case, the Court finds that the use of Mr. Scruggs's declaration in Plaintiffs' case-in-chief would greatly prejudice Defendant. "The Second Circuit has observed that where the new testimony is in the form of a new expert witness opinion, the potential for prejudice is real." *Browe v. CTC Corp.*, 2017 WL 5992333, at *5 (D. Vt. Dec. 1, 2017) (citing *Allen v. Dairy Farmers of Am.*, 2013 WL 6909953, at *8 (D. Vt. Dec. 31, 2013) (noting that a party cannot use

11

a "rebuttal" report to offer a new opinion or one that "fundamentally chang[es] a key aspect" of a previously disclosed opinion); *Pride v. BIC Corp.*, 218 F.3d 566, 578-79 (6th Cir. 2000) (concluding that the trial court properly refused to allow rebuttal reports that constituted a "transparent attempt" to redress weaknesses identified in the original expert report); *Jorgenson Forge Corp. v. Consarc Corp.*, 2002 WL 34363668, at *1 (W.D. Wash. Jan. 9, 2002) (excluding rebuttal opinions that went "well beyond the scope of the Plaintiff's expert reports and introduce[d] new opinions")). And Plaintiffs have not demonstrated why the other factors in *Patterson*, 440 F.3d at 117, would not weigh against preclusion of the evidence. Moreover, if the Court allows Plaintiffs to introduce Mr. Scruggs's rebuttal testimony in their case-in-chief, "the Court would also have [] to allow Defendant[] to offer rebuttal expert testimony," which would result in "additional time and resource expenditures for Defendant[.]" *Vioni v. Providence Inv. Mgmt., LLC*, 2017 WL 881841, at *4 (S.D.N.Y. Mar. 6, 2017) (precluding use of rebuttal testimony in case-in-chief) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)); *cf. NIC Holding Corp. v. Lukoil Pan Americas*, 2009 WL 996408, at *4 (S.D.N.Y. Apr. 14, 2009) (precluding use of plaintiff's rebuttal witness after defendant elected not to call its substantive witness). Depending on the evidence Defendant offers in its case-in-chief, some or all of Mr. Scrugg's opinion may become admissible. That question will have to await Defendant's case. For now, however, and with respect to Plaintiffs' case-in-chief, the Court will strike the declaration of Mr. Scruggs.

**CONCLUSION**

The motion to strike witness declarations is hereby GRANTED IN PART AND DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. Nos. 162, 165.

SO ORDERED.

Dated: September 16, 2020
      New York, New York

                                  LEWIS J. LIMAN
                              United States District Judge